# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3859

_____

| | | |
|---|---|---|
| Brent Gisslen, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| City of Crystal, Minnesota, a | * | Appeal from the United States |
| municipality; E. Gary Joselyn, | * | District Court for the |
| individually, and in his official | * | District of Minnesota. |
| capacities; Thomas A. Mathisen, | * | |
| individually and in his official | * | |
| capacities; Jerry Dulgar, individually, | * | |
| and in his official capacities, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: October 7, 2002

Filed: September 26, 2003

_____

Before MURPHY, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Brent Gisslen appeals from an order of the district court[1] sustaining a motion to dismiss his complaint for lack of subject matter jurisdiction. Gisslen brought this action against the City of Crystal, Minnesota, the City Manager, the City Engineer, and a member of the City Council, asserting six civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986 for damages in connection with the condemnation of Gisslen's property. Gisslen argues that the district court erred in its determination that his claims are barred by the Rooker -Feldman doctrine. Because we conclude that the district court correctly applied the law, we affirm.

In 1984, Gisslen purchased a four-acre parcel of property in the City of Crystal, which includes most of a pond along with other land. Beginning in 1990, Gisslen and the City spent seven years engaged in numerous disputes involving his property. Their first encounter was a condemnation proceeding which resulted in the City obtaining a sewer easement on Gisslen's property. The City was required to maintain the easement. In August of 1991, the City dumped two loads of crushed asphalt on Gisslen's property line without his permission, and he voiced his complaint to City, regional, and state institutions. The City notified Gisslen that he needed to abate a hazardous building on his property, and told him to rebuild his front wall. The sewer easement caused the greatest number of disputes, including litigation, when sediment built up in the pond as a result of the City's failure to properly maintain the sewer outlet emptying into the pond.

Meanwhile, the City expressed its interest in acquiring Gisslen's property. First, the City offered to buy the property for $100,000 in August of 1991. Next, in March of 1997, the City attempted to obtain a Natural Scenic Area Grant through the Minnesota Department of Natural Resources to purchase Gisslen's property. Four months later, the City notified Gisslen that it had not received the grant, but that the

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

-2-

City Council was still interested in acquiring the property. Gisslen told the City, through his attorney, that he was not interested in selling his property to the City because he intended to build his family's "dream" home at the location. He alleges that the City wanted to acquire his property in retaliation for his complaints to various state and regional authorities about the City's conduct.

In November of 1997 and January of 1998, the City Council approved resolutions to obtain two parcels of Gisslen's property through eminent domain proceedings. The City indicated that it intended to use the property for park, natural resources, recreation, and open space purposes. Gisslen alleges that the City had no such intention, but that its goal was retaliation for Gisslen speaking out about the City's conduct. The City acted on these resolutions by commencing a condemnation action in Hennepin County District Court. The matter was heard on January 27, 1998. Gisslen appeared pro se at the hearing and introduced no evidence. The trial court found that the City had the authority to acquire the property, concluded that the taking was for a public use and purpose, and appointed three commissioners to ascertain and report the amount of damages due to Gisslen for the taking.

The Commissioners awarded Gisslen damages in the amount of $158,500. Gisslen appealed this award to the trial court and the City filed a cross-appeal. As Minnesota law provides, the trial court conducted a jury trial to determine the fair market value of the property. Gisslen was represented by counsel at trial, and the jury returned a verdict of $192,553. After the judgment was entered, the parties entered into a stipulation of settlement whereby the City agreed to pay Gisslen the amount of the verdict and his costs in exchange for Gisslen waiving his right to appeal the verdict. The City satisfied the judgment the following day.

Eleven months later, Gisslen filed this action. In it, he seeks actual and punitive damages for each of six counts; he alleges all defendants are liable for actual damages, and the individual defendants are liable for punitive damages. Gisslen

asserts that the condemnation action was retaliation against him for speaking out on matters of public concern in violation of the First and Fourteenth Amendments to the Constitution; that the City condemned his property and not his adjoining neighbors' property because he objected to the City's conduct, and that this discrimination was in violation of his equal protection rights under the Fourteenth Amendment; that the condemnation resulted in denying him just compensation for the taking of his property in violation of the Fifth Amendment; that the condemnation action was hurriedly undertaken to prevent Gisslen from pursuing his legal rights against the City for its conduct with respect to his property, in violation of his substantive due process rights under the Fourteenth Amendment; that the individual defendants acted under color of state law to conspire to deprive Gisslen of his constitutional rights as alleged in the first four counts; and that all defendants neglected to prevent this conspiracy.

The City and its officials moved to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) or, alternatively, for summary judgment. The district court determined that any ruling it made on the claims would require it to invalidate the state court judgment, and that the claims were therefore precluded under the Rooker-Feldman doctrine. The district court granted the motion to dismiss, from which Gisslen appeals.

I.

The district court's determination that it lacked subject matter jurisdiction is an issue of law which we review de novo. Charchenko v. City of Stillwater, 47 F.3d 981, 982 (8th Cir. 1995). We apply the same standards as those used by the district court. Grey v. Wilburn, 270 F.3d 607, 608 (8th Cir. 2001).

The Rooker-Feldman doctrine provides that, "with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges

to state court judgments." Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000) (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)). District courts have no authority to review state court decisions, "even if those challenges allege that the state court's action was unconstitutional," Feldman, 460 U.S. at 486, because "federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court," Lemonds, 222 F.3d at 492 (citations omitted).

Gisslen is not directly appealing the state court's judgment in the condemnation case, but the Rooker-Feldman doctrine extends beyond "straightforward appeals . . . [to] more indirect attempts by federal plaintiffs to undermine state court decisions." Id. In other words, the state and federal claims need not be identical for the doctrine to apply. See Goetzman v. Agribank, FCB (In re Goetzman), 91 F.3d 1173, 1177 (8th Cir. 1996). The doctrine thus precludes federal court jurisdiction over federal claims that are "inextricably intertwined" with claims of the state court action. See Feldman, 460 U.S. at 483 n. 16. A federal claim is inextricably intertwined if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

Gisslen contends that the district court erred because his complaint is not a challenge to the state court decision as there were different claims for relief sought in the district court action. In the condemnation petition, the City sought ownership of Gisslen's property and a determination of what it must pay to Gisslen as fair compensation for the taking. Gisslen's federal complaint seeks damages for alleged constitutional violations arising out of the taking.

This distinction does not prevent us from concluding as a matter of law that the federal and state court actions are inextricably intertwined such that the Rooker-Feldman doctrine bars the district court from hearing Gisslen's claims. If Gisslen were to prevail in the district court, that would necessarily entail a ruling that the state

-5-

court wrongly decided that: 1) the taking was in the public interest and/or; 2) Gisslen had been fairly compensated for the loss of his property. "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues. . . are inextricably intertwined." Silverman v. Silverman, 338 F.3d 886, 893 (8th Cir. 2003) (en banc) (quoting Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001)); see also Snider v. City of Excelsior Springs, Missouri, 154 F.3d 809, 811-12 (8th Cir. 1998) (Rooker-Feldman bars suit where state court heard and decided condemnation action and federal court was being asked to order condemnation damages and reinstate property interests because requested relief would effectively void state court judgment).

Gisslen contends that the two cases are demonstrably different because he is seeking compensatory damages in the federal court action that were not available to him in the condemnation case, and his federal complaint does not ask for return of the property that the city acquired through eminent domain. While the relief requested in the two actions may be labeled differently, the reality is that Gisslen is asking the federal court for the same remedy requested in the state court action: just compensation. Contrary to Gisslen's assertion, he could have introduced evidence in the condemnation case concerning the effect of the City's management of the sewer easement on the value of his property.

> The general rule is that any evidence which legitimately bears upon the market value, either before or after the taking, including damage inflicted upon the part remaining, should be received. Where property is taken for public use in condemnation proceedings, any evidence is competent and any fact may properly be considered which legitimately bears on the market value of the property.

State v. Gannons Inc., 145 N.W.2d 321, 325-26 (Minn. 1966) (citations omitted).

Gisslen chose to proceed pro se in the condemnation case until after the commissioners entered their award. He offered no evidence before the trial court at the hearing on the petition or before the commissioners. When he did retain counsel and exercise his right to a jury trial on the issue of damages,[2] his attorney did not offer evidence of diminution in value as a result of the City's conduct. He did not seek to add parties to the action. Gisslen had the statutory right to do both. Minn. Stat. § 117.175 subd. 1 (2002).[3]

When the judgment was entered following the jury trial, Gisslen agreed to a settlement with the City in which he was immediately paid damages in the amount awarded by the jury and waived his right to appeal. Had he appealed, he could have pursued the same constitutional challenges which he asserted in his federal complaint. See In re Minneapolis Cmty. Dev. Agency , 439 N.W.2d 708, 710 (Minn. 1989); Hous. & Redev. Auth. v. Minneapolis Metro. Co., 104 N.W.2d 864, 874 (Minn. 1960). His failure to do so precludes the district court from having jurisdiction over his complaint. This issue was squarely addressed by the Supreme Court in Feldman:

> [T]he fact that we may not have jurisdiction to review a final state-court judgment because of a petitioner's failure to raise his constitutional claims in state court does not mean that a United States district court should have jurisdiction over the claims. By failing to raise his claims

[2]Minn. Stat. § 117.165 subd. 1 (2002) ("In all eminent domain proceedings where an appeal is taken to the district court from the award of commissioners, the owner or the petitioner shall be entitled to jury trial.").

[3]The statute directs in relevant part that:

Such appeal [from the award of commissioners] may be noticed for trial and tried . . . as in the case of a civil action and the court may direct that issues be framed, and require other parties to be joined and to plead therein when necessary for the proper determination of the questions involved.

-7-

in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court. This result is eminently defensible on policy grounds. We have noted the competence of state courts to adjudicate federal constitutional claims.

460 U.S. at 484 n.16 (citations omitted). Gisslen had the opportunity to raise his constitutional claims before the trial court and on appeal to the Minnesota Court of Appeals. Because he did not, the Rooker-Feldman doctrine prevents those claims from being brought in federal court. The doctrine does not apply exclusively to decisions from a state's highest appellate court of right, but also applies with equal force to decisions from a state trial court. Charchenko, 47 F.3d at 982, 983 n. 1 (Rooker-Feldman does not depend on final judgment on the merits, but applies where trial court dismissed action and plaintiff did not appeal). The district court did not err in dismissing the complaint because the claims it presented were inextricably intertwined with those of the state court action.

II.

Gisslen also contends that the district court erred in dismissing his complaint because the state and federal actions did not involve the same parties. Gisslen was a party defendant to the state court condemnation action, and the City was the party plaintiff. The roles are reversed in this action, and Gisslen added three individual defendants who were not parties to the state court action.

Gisslen's contention does not change the analysis of the Rooker-Feldman doctrine. The controlling issue remains whether Gisslen has stated a claim that is inextricably intertwined with the state court case. Federal court jurisdiction is not determined by whether the parties are identical, but by whether the claims are sufficiently separate from those of the state court action. If the federal claims "so closely implicate the decision of the state court," the federal suit is barred even if Gisslen is not directly asking the district court to overturn the state court judgment.

-8-

Lemonds v. St. Louis County, 222 F.3d 488, 493 (8th Cir. 2000). Gisslen was a party to both the state and federal actions, and he cannot disguise the similarity between the two by adding parties to the latter. In Lemonds, we held that the applicability of Rooker-Feldman does not depend upon the identity of the parties in the state and federal suits because the doctrine is rooted in federalism. 222 F.3d at 495. "[T]he lower federal courts. . . are simply without authority to review most state court judgments – regardless of who might request them to do so." Id.

Gisslen chose to proceed in the condemnation action without introducing evidence with respect to the propriety and necessity of the taking, and ultimately he waived his right to appeal the judgment. He thus failed to raise issues before the trial court that he could have raised and that the trial court would have had jurisdiction to decide. Gisslen cannot avoid the consequence of those choices by asking the district court to rule on matters that could have been a part of the condemnation case. The Rooker-Feldman doctrine, which tests subject matter jurisdiction, is not discretionary. As we wrote in Lemonds:

> The key inquiry, as always, must be whether the federal plaintiff's interest in having a state rule set aside is inseparable from his interest in upsetting a particular state court judgment based on that rule.
>
> [T]here can be little doubt that both appellants had ample opportunity to bring their [constitutional] claims in state court. . . . Yet, rather than pursuing their claims before the state court, appellants awaited that court's adverse ruling before attempting to bring their substantively identical challenges in federal district court. This the Rooker-Feldman doctrine does not allow.

222 F.3d at 495-96 (citations omitted). The district court is without jurisdiction, and we affirm its judgment.

_____