Stacy Lane VANHORN, Plaintiff,

v.

**NEBRASKA STATE RACING COMMISSION, et al., Defendants.**

No. 4:03 CV 3336.

United States District Court, D. Nebraska.

Jan. 27, 2004.

David T. Schroeder, O. William VonSeggern, Kelly, Schroeder Law Firm, Grand

Island, NE, Terri M. Weeks, Boucher Law Firm, Lincoln, NE, for Plaintiff.

Jennifer Tomka, Attorney General's Office, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

KOPF, Chief District Judge.

The plaintiff, Dr. Stacy Lane VanHorn, a licensed veterinarian in the State of Nebraska, brings this § 1983 action against the Nebraska State Racing Commission, its executive secretary, Dennis Oelschlager, and its three gubernatorially appointed members, Dennis P. Lee (chairman), Janell Beveridge, and Bob Volk. The plaintiff, who held a special license from the commission to treat racehorses during 2001, claims that (1) he was denied procedural due process when he (a) was disciplined by the commission in 2002 and (b) was denied either an annual license or a temporary license to treat racehorses in 2002; (2) he was denied a first amendment right of freedom of association by being banned from public areas of racetracks; (3) he was denied equal protection because (a) a directive was issued that effectively precluded only the plaintiff and his employer from treating racehorses off-premises, and (b) other similarly situated individuals were licensed while under investigation by the commission; and (4) he was denied procedural due process when he was not issued an annual or temporary license in 2003.

At issue is a motion to dismiss (filing 19) that has been filed by all defendants pursuant to Fed.R.Civ.P. 12(b)(6). In support of their motion, the defendants argue that (1) the plaintiff does not have a property interest in a special license to practice veterinary medicine on racehorses; (2) even if he had a property interest in a license, the plaintiff was afforded all the process he was due; (3) the individual defendants are entitled to absolute quasi-judicial immunity; (4) the individual defen-

dants are entitled to qualified good faith immunity; (5) the commission and the other defendants in their official capacities are entitled to sovereign immunity; (6) the plaintiff has failed to state a valid first amendment claim; (7) the plaintiff has failed to state a valid equal protection claim; (8) the *Younger* abstention doctrine should be applied because the plaintiff's disciplinary proceeding remains pending on appeal in state court; and (9) the plaintiff's claims are barred by (a) the *Rooker–Feldman* doctrine, (b) *res judicata*, or (c) collateral estoppel. The plaintiff disputes each of these arguments.

## I. Background

It appears from the plaintiff's 24–page, 77–paragraph complaint (filing 1) that the commission served him with a formal disciplinary complaint on January 10, 2002, charging, among other things, that the plaintiff had violated the rules of racing during 2001 by administering Clonidine to certain horses within 24 hours of post time. He was also notified on such date that if he applied for a license as a racehorse veterinarian in 2002, the executive secretary would refer his application to the commission for a hearing with the recommendation that the plaintiff be required to show cause why the license should not be denied.

Plaintiff applied for a license on April 5, 2002, and was informed by the executive secretary that his application would be held for further investigation. On May 10, 2002, the plaintiff applied for a temporary license, which was denied by the commission upon the recommendation of the executive secretary.

The commission conducted a hearing on its complaint and on the plaintiff's April license application on September 23–24, October 22, and November 25, 2002. The commission found numerous rules violations and it disciplined the plaintiff by

imposing a $2,000 fine, banning him from any premises under the commission's jurisdiction until January 1, 2006, and declaring him ineligible for a license during the period of the ban. In April 2003, the commission also issued a directive that any racehorse examined or treated off-premises by a veterinarian who was ineligible for a commission license would not be permitted to race for 14 days. The plaintiff claims that such directive applied only to horses that were treated by him or his employer, Dr. Douglas L. Brunk, who apparently was also disciplined by the commission and declared ineligible for licensing.

Pursuant to the Nebraska Administrative Procedure Act, the plaintiff appealed the commissioner's decision by filing an action is the District Court of Lancaster County, Nebraska. The court ruled on May 20, 2003, that there was insufficient evidence to support any of the commission's charges except a failure by the plaintiff to properly handle, package, and report his drug supply; it also found that the proper remedy for such violation was a $2,000 fine and a ban lasting until July 1, 2003. (The defendants state that the commission has appealed the district court's order to the Nebraska Court of Appeals, and, accordingly, that the order has been stayed.)

On February 8, 2003, the plaintiff attended races at Fonner Park, as a spectator. The executive secretary had him arrested for trespassing. He was found not guilty of the charge. Thereafter, on May 26, 2003, the plaintiff visited the simulcast area of State Fair Park. The executive secretary ordered a racetrack employee to remove the plaintiff from the premises.

On July 2, 2003, the plaintiff again applied for an annual license. He was told the next day that his application would be held for further investigation. On July 8, 2003, the plaintiff applied for a temporary license. That application was also placed on hold on July 17, 2003. A hearing on the temporary license application was then set for September 22, 2003, well past the end of the 2003 racing season.

The plaintiff filed suit in this court on September 15, 2003. In addition to seeking compensatory and punitive damages from the individual defendants, he requests unspecified declaratory and injunctive relief.

## II. Discussion

In determining whether the complaint states a claim upon which relief can be granted, I am required to accept as true all factual allegations in the complaint, but to give no effect to conclusory allegations of law. *See Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 698 (8th Cir.2003). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Krentz v. Robertson,* 228 F.3d 897, 905 (8th Cir.2000). In other words, dismissal is justified only when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 344–45 (2d ed. 1990).

### A. Quasi–Judicial Immunity

■ "Persons who perform quasi-judicial functions are entitled to absolute immunity. *See Butz v. Economou,* 438 U.S. 478, 512–16, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *see also Kwoun v. Southeast Missouri Professional Standards Review Organization,* 811 F.2d 401, 407 (8th Cir. 1987). The Supreme Court has held that

absolute immunity is appropriate when an official's functions are similar to those involved in the judicial process, *see Butz*, 438 U.S. at 513, 98 S.Ct. 2894, an official's actions are likely to result in lawsuits for damages by disappointed parties, *see id.* at 515, 98 S.Ct. 2894, and sufficient safeguards exist in the regulatory framework to control unconstitutional conduct, *see id.* at 512, 98 S.Ct. 2894. *See also Ostrzenski v. Seigel,* 177 F.3d 245, 249 (4th Cir.1999), and *Romano v. Bible,* 169 F.3d 1182, 1187 (9th Cir.1999)." *Dunham v. Wadley,* 195 F.3d 1007, 1010 (8th Cir.1999) (holding that members of veterinary medicine licensing board were absolutely immune from suit).

For the reasons discussed below, I find that the individual defendants are absolutely immune from suit on paragraphs 51, 53 (in part), 54, 57, 58, 59, 60, 61, 62, and 63 of the plaintiff's "first cause of action," and on paragraph 66 of the plaintiff's "second cause of action." In all other respects, the defendants' motion to dismiss on the basis of quasi-judicial immunity will be denied.

### 1. First Cause of Action

 It seems clear that the individual defendants (*i.e.*, Oelschlager, Lee, Beveridge, and Volk sued in their individual capacities) are absolutely immune from suit with respect to their conduct of the plaintiff's disciplinary proceeding.[1] The Nebraska State Racing Commission is a state agency with established procedures for deciding "contested cases," including disciplinary proceedings involving its licen-

sees.[2] *See generally Durousseau v. Nebraska State Racing Com'n,* 194 Neb. 288, 231 N.W.2d 566, 569 (1975) (commission has authority to initiate proceeding to determine if its rules have been violated); Neb.Rev.Stat. §§ 2-1201 to 2-1205.

Those administrative hearing procedures closely resemble judicial procedures and provide adequate constitutional safeguards. *See* Neb.Rev.Stat. §§ 84-913 to 84-919; Title 294, Nebraska Administrative Code ("294 NAC"), Chapter 7. Among other things, the commission is required to prepare an official record of the testimony and exhibits presented at the hearing, 294 NAC at § 7.001.10; a party may request that the commission be bound by the rules of evidence applicable in state court, *id.* at § 7.001.10A(1); the commission may administer oaths, issue subpoenas, compel the attendance of witnesses and the production of any papers, books, accounts, documents, and testimony, and cause depositions to be taken in the same manner as in civil cases in state court, *id.* at § 7.001.10B; the commission is not permitted to consider factual information or evidence that is not included in the record, *id.* at § 7.001.10C; every party has the right to cross-examine witnesses and to present rebuttal evidence, *id.* at § 7.001.10D; the commission is required to render a written decision, including its findings of fact and conclusions of law, *id.* at § 7.001.11; and an aggrieved party has the right to appeal the decision to a state court under provisions of the Nebraska Administrative Procedure Act, *id.* at § 7.001.15.

---

1. Quasi-judicial immunity does not extend to the commission or to the other defendants sued in their official capacities, however. *See, e.g., Alkire v. Irving,* 330 F.3d 802, 811 (6th Cir.2003) (judge and sheriff sued in their official capacities were not entitled to claim any personal immunities), citing *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("The only immunities that can be claimed in an official-capacity

action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.").

2. A contested case is "a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing." Neb.Rev.Stat. Ann. § 84-901(3) (Lexis 2003).

■ Thus, even though the plaintiff charges that the commission exceeded its authority and failed to adhere to its own procedures for judging his alleged rule violations, I find that the commissioners and the executive secretary cannot be sued in their personal capacities with respect to any actions that were taken by them in direct connection with the adjudication of the formal disciplinary complaint that was filed against the plaintiff. *See Durousseau v. Louisiana State Racing Com'n*, 724 So.2d 844, 847 (La.App.1998) (state racing commission's adjudicative hearings shared enough characteristics of the judicial process for absolute immunity to apply); *Malgarini v. Washington Jockey Club*, 60 Wash.App. 823, 807 P.2d 901, 904 (1991) (state horse racing commission adjudication of a rule violation is a quasi-judicial matter); *Tulio v. Commonwealth of Pa., State Horse Racing Com'n*, 79 Pa.Cmwlth. 305, 470 A.2d 645, 649 (1984) (state horse racing commissioner enjoyed quasi-judicial immunity regarding actions within her adjudicatory capacity).[3]

■ This finding requires dismissal of the plaintiff's "first cause of action" against the individual defendants insofar as it is alleged that they violated the plaintiff's fourteenth amendment right to due process by disciplining him even though he was no longer licensed (complaint ¶ 51),[4] by prejudging his case and demonstrating actual bias (complaint ¶¶ 54, 58, 60, 61, and 62),[5] by engaging in ex parte communica-

---

**3.** The executive secretary of the commission, like a court clerk, is immune from suit in his individual capacity for any acts taken in connection with the plaintiff's disciplinary proceeding that were discretionary, or that were done at the direction of the commission or according to its rules; he is not absolutely immune for ministerial acts, however. *See Geitz v. Overall*, 62 Fed.Appx. 744, 746 (8th Cir.2003) (discussing clerk immunity). The executive secretary may also enjoy absolute immunity when performing certain "prosecutorial" duties. *See, e.g., Kwoun v. Southeast Missouri Professional Standards Review Organization*, 811 F.2d 401, 410 (8th Cir.1987) (decision by executive secretary of medical licensing board to initiate proceedings to suspend or revoke physician's license was essentially an advocatory prosecutorial function).

**4.** A defendant who allegedly has acted in "complete absence of all jurisdiction" is not shielded by quasi-judicial immunity. *See Dunham*, 195 F.3d at 1011 (quoting *Duty v. City of Springdale, Arkansas*, 42 F.3d 460, 462 (8th Cir.1994) (per curiam)). There is a distinction, however, between acts performed in excess of jurisdiction and those done in the absence of jurisdiction. "As to the former, a 'judge acts in excess of jurisdiction if the act complained of is within his general power of jurisdiction but is not authorized because of certain circumstances.' *Billingsley v. Kyser*, 691 F.2d 388, 389 (8th Cir.1982) (per cu-

riam). As to the latter, '[t]here is a clear absence of jurisdiction when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction, such as when a probate court conducts a criminal trial.' *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir.) (internal quotation omitted), *cert. denied*, 513 U.S. 870, 115 S.Ct. 193, 130 L.Ed.2d 126 (1994)." *Duty*, 42 F.3d at 462–463. The present case involves a claim that the defendants exceeded their jurisdiction in disciplining the plaintiff after his 2001 license expired; it is not claimed that they generally lacked authority to discipline license holders. Consequently, they are immune from suit on such claim. *See, e.g., Penn v. United States*, 335 F.3d 786, 789 (8th Cir.2003) ("A judge does not lose immunity for all judicial acts taken in excess of jurisdiction. If that were the case, every appellate invalidation of an order based upon lack of jurisdiction would expose the trial judge to a suit for damages.").

**5.** In addition to alleging generally that the defendants Lee, Beveridge, and Volk "prejudged the issues pertinent to the disciplinary matter" (complaint ¶ 54) and displayed an "irrevocable predisposition and predetermination ... [that] deprived Plaintiff of a neutral and impartial decision maker" (complaint ¶ 58), the plaintiff claims that these defendants departed from the recommended penalties for Clonidine use (complaint ¶ 60), imposed lesser penalties on the trainers of the

tions with investigators (complaint ¶ 57),[6] by not ruling on various pre-hearing motions (complaint ¶ 59),[7] and by considering information that was not formally received into evidence (complaint ¶ 63).[8] Other allegations of wrongdoing in the "first cause of action" do not necessarily involve actions that were taken by the defendants in their adjudicatory capacities, however.

■ First, it is alleged that "Defendants Racing Commission, Lee, Beveridge, Volk, and Oelschlager, refused to produce reports of the investigations pursuant to a motion to compel filed by the Plaintiff *denying Plaintiff an explanation of the evidence to be used against him.*" (Complaint ¶ 52) The plaintiff earlier alleged that "[o]n or about January 31, 2002, Defendant Racing Commission, acting through Defendant Lee refused to produce reports of investigators pursuant to a motion to compel filed by the Plaintiff, yet

pursuant to the standard operating procedures of Defendant Oelschlager, said investigative reports were forwarded to the Racing Commission and its members Defendants Lee, Beveridge and Volk for their consideration in this matter." (Complaint ¶ 28) Responding to a discovery motion is not typically a judicial function.

Second, it is alleged that "Defendants Racing Commission and its members, Defendant Lee, Defendant Beveridge, Defendant Volk, and Defendant Oelschlager, denied the Plaintiff a license in the year 2002 without giving him notice or any meaningful opportunity to be heard and requiring him to 'show cause why he should not be denied' a license." (Complaint ¶ 53) The hold that the executive secretary placed on the plaintiff's application for a 2002 license, and the subsequent vote by the commission members to deny the plaintiff a temporary license, do not appear to have been

---

horses that tested positive for Clonidine (complaint ¶ 61), and imposed a larger fine than is permitted by law (complaint ¶ 62), all of which actions are alleged to be evidence of actual bias. "But holding a prior opinion about a case is not a non-judicial act; indeed, it is no act at all." *Scott v. Schmidt,* 773 F.2d 160, 164 (7th Cir.1985) (members of state racing board absolutely immune from claim that they were predisposed to deny license).

6. The plaintiff alleges that "[c]ommunication between Defendants Oelschlager, and employees Dan Sweetwood and Tom Sage with Defendants Lee, Beveridge and Volk, ex parte deprived Plaintiff of neutral and unbiased hearing panel." (Complaint ¶ 57) "To the best of Plaintiff's knowledge and belief, Defendant Oelschlager, and Investigators Sweetwood and Sage had contact with Defendants Lee, Beveridge and Volk ex parte and without the knowledge or consent of Plaintiff, both before the Complaint was filed and after the Complaint was filed but before the Complaint was heard with regard to the subject of the Complaint." (Complaint ¶ 26) "Courts have granted absolute immunity despite claims of ex parte communications with judges, including administrative law judges. *See, e.g., Ru-*

*dow v. City of New York,* 642 F.Supp. 1456, 1460–63 (S.D.N.Y.1986), *aff'd,* 822 F.2d 324 (2d Cir.1987); *Barrett v. United States,* 622 F.Supp. 574, 589 (S.D.N.Y.1985), *aff'd,* 798 F.2d 565 (2d Cir.1986)." *Fares v. U.S. Immigration and Naturalization Service,* 29 F.Supp.2d 259, 263 (W.D.N.C.,1998), *aff'd,* 11 Fed.Appx. 137 (4th Cir.2001).

7. The plaintiff does not identify the nature of the pre-hearing motions. He merely alleges that "[a]fter the Complaint was lodged against the Plaintiff, but prior to the hearing that was conducted by the Racing Commission, the Plaintiff filed various motions with the Racing Commission raising various pretrial issues for the Racing Commission's consideration. Defendants, Racing Commission, Lee, Beveridge, Volk, and Oelschlager, failed or refused to grant Plaintiff a hearing on some of the issues raised in said motions and failed to address or rule upon other issues raised in said motions." (Complaint ¶ 25)

8. The extrajudicial evidence presumably involves the executive secretary's alleged practice of providing investigative reports to the commission members in advance of the hearing. (*See* complaint ¶¶ 27, 28)

treated by the defendants as quasi-judicial decisions; and, indeed, the commission's regulations suggest that these interim decisions regarding licensing were entirely discretionary and did not require a "contested case" hearing.[9] *See Lee v. Oregon ex rel. Oregon Racing Com'n,* 4 Fed.Appx. 490, 2001 WL 180782 (9th Cir.2001) (members of racing commission not absolutely immune from damages for barring plaintiffs from horse racing meets; defendants issued a summary exclusion order, without notice or hearing, that was designed to enforce the commission's regulations; issuance of the order was neither an integral part of the judicial process nor functionally analogous to a judicial act).

▆ Regarding the plaintiff's application for a 2002 annual license, however, it is alleged that a hearing was conducted over a two-month period in conjunction with the disciplinary proceeding. As will be discussed more with reference to the defendants' qualified immunity defense, any license denial resulting from that "contested case" hearing—even a de facto denial resulting from a delay in conducting the hearing—would be a quasi-judicial act. *See Stoneman v. United Nebraska Bank,* 254 Neb. 477, 577 N.W.2d 271, 277 (1998) (the exercise of discretion to grant or deny a license, permit or other type of application generally is a quasi-judicial function that requires a hearing). The commission members, individually, therefore are absolutely immune from suit regarding their alleged denial of the 2002 annual license. The role that the executive secretary played in the denial of the annual license, and, consequently, his entitlement to abso-

lute immunity, cannot be determined from the pleadings.

Third, it is alleged that "Defendant Oelschlager, by providing in advance of the hearing to Defendant Racing Commission and its members, Defendants Lee, Beveridge and Volk evidence regarding the case violated the Plaintiff's right to due process by denying him a fair and neutral fact finder." (Complaint ¶ 55) While it is possible that the executive secretary's alleged conduct was "intimately associated" with the adjudication of the disciplinary complaint filed against the plaintiff, and therefore subject to absolute immunity, it might also be considered investigatory or administrative, and subject only to qualified immunity. "The U.S. Supreme Court has emphasized 'the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'" *Anderson v. Larson,* 327 F.3d 762, 768 (8th Cir.2003) (quoting *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)).

Fourth, and finally, it is alleged that "Defendant Oelschlager and Defendant Lee were without statutory or other authority to authorize any Racing Commission employee to grant immunity to witnesses, thereby denying Plaintiff due process." (Complaint ¶ 56) According to the plaintiff, "[d]uring the course of the investigation [Racing Commission] Investigator [Dan] Sweetwood, with the authority and approval of Defendants Lee and Defendant Oelschlager, granted 'immunity' to various witnesses, including horse trainers, in an attempt to secure their testimony against the Plaintiff. To

9. "Every veterinarian who examines or treats a horse registered for racing at the Racing Secretary's office, at a licensed meeting then in progress, must be licensed by the Nebraska State Racing Commission." 294 NAC § 10.005. The executive secretary has "authority to issue the license, hold the applica- tion for further investigation, or refer it to the Commission for final action." 294 NAC § 14.005.01. "A temporary license may be issued pending the outcome of any licensing investigations or Commission decisions." 294 NAC § 10.005.01.

the best of the Plaintiff's knowledge and belief Investigator Sweetwood attempted to coerce and browbeat witnesses to offer testimony against the Plaintiff." (Complaint ¶ 24)

The plaintiff further alleges, however, that "[d]espite the fact that the Commission granted immunity to many of the trainers in return for their cooperation in the investigation against Plaintiff none of them offered incriminating testimony against him, in fact the trainers testified that Plaintiff had not administered Clonidine on race day to any of the horses found to have Clonidine in their system." (Complaint ¶ 40.b) Based upon the wording of the plaintiff's complaint, this alleged due process violation seems to involve the commission's investigation procedures rather than its conduct of the plaintiff's disciplinary proceedings.

### 2. Second Cause of Action

██ The plaintiff claims in his "second cause of action" that his first amendment rights were violated when the executive secretary (defendant Oelschlager) twice ejected him from public areas of racetracks (complaint ¶ 65), and also when the commission "issued its order barring him form all areas under the jurisdiction of the Racing Commission when that order included areas open to the members of the general public, . . ." (complaint ¶ 66). Defendant Oelschlager does not explain why he should be absolutely immune from having the defendant arrested and forcibly removed from the racetracks, nor is the basis for his claim of immunity self-evident.

██ As to the commission members, though, it is apparent that the adjudication process includes the imposition of sanctions. See Dunham, 195 F.3d at 1011 ("To the extent that the board weighed evidence, made factual determinations, determined sanctions, and issued written decisions, we conclude that these duties are functionally comparable to the duties performed by courts."). I thus find that the defendants Lee, Beveridge, and Volk, in their individual capacities, cannot be sued for having barred the plaintiff from public areas of racetracks, and the "second cause of action" will be dismissed as against them.

### 3. Third Cause of Action

██ The plaintiff's equal protection claim ("third cause of action") challenges the defendants' actions in denying him a temporary license during 2002 and in issuing a directive in April 2003 about racehorses being treated off-premises by unlicensed veterinarians. As previously discussed, there is no indication in the pleadings that the temporary license denial was a quasi-judicial decision. The April 2003 directive also appears to be an administrative decision for which the defendants are not entitled to absolute immunity. The defendants' motion to dismiss the plaintiff's equal protection claim on the basis of quasi-judicial immunity will be denied.

### 4. Fourth Cause of Action

██ The "fourth cause of action" concerns the commission's refusal to license the plaintiff during 2003. If this due process claim were based upon the commission's disciplinary ruling that the plaintiff would be ineligible for licensing until January 1, 2006, then absolute immunity would apply. As alleged, however, it appears that the plaintiff is attempting to raise other procedural objections.

The plaintiff alleges that he applied for a license on July 2, 2003, "pursuant to the order of the Lancaster County Court wherein it stated the Plaintiff was eligible for licensing by the Racing Commission as of July 1, 2003." (Complaint ¶ 70) "On July 3, 2003, the Plaintiff received a letter from Defendant Oelschlager advising . . .

that he was holding the Plaintiff's application for further investigation." (Complaint ¶ 71) "Plaintiff requested . . . that a temporary license be issued to him pending resolution of his application for a license." (Complaint ¶ 72) "On July 17, 2003, Defendant Oelschlager informed the Plaintiff that his application for a 2003 license and temporary license was being held for further investigation. In that letter, Defendant Oelschlager informed Plaintiff that information that was available for discovery or actually known to the Racing Commission . . . at the time of his hearing on the 2002 Complaint was now being utilized by the Racing Commission for it's [sic] decision on his 2003 application." (Complaint ¶ 73)

"Defendants have set the Plaintiff's application for a temporary license for hearing on September 22, 2003, well after the last day of the 2003 racing season effectively depriving him of any chance of practicing his race track profession during the 2003 racing season." (Complaint ¶ 74) "Defendant Oelschlager, while a paid employee of the Racing Commission, accepted a job as a Steward at Hoosier Park, a race track located in Indiana. . . . This outside employment has cause [sic] a delay and unfairly prejudiced the Plaintiff's ability to obtain a timely investigation and decision on his 2003 application." (Complaint ¶ 75) "In September of 2003, the Racing Commission, through it's [sic] agent Defendant Oelschlager contacted an individual, in an attempt to secure his testimony against the Plaintiff at the hearing on the Plaintiff's 2003 application. When the individual refused to testify, Defendant Oelschlager offered the individual a letter of recommendation for licensure in exchange for his testimony against the Plaintiff." (Complaint ¶ 76)

It is not apparent that any of these alleged actions taken by the executive secretary or the other defendants were quasi-judicial in nature. The defendants' motion to dismiss the claim on this basis will be denied.

### B. Qualified Immunity

"Qualified immunity protects government officials from damage liability unless their discretionary acts violated clearly established statutory or constitutional rights. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity guards against the injustice of subjecting public officials to damage liability for the good faith performance of discretionary duties they are legally obligated to undertake, and the danger that the threat of such liability will deter officials from performing with the decisiveness and judgment the public good requires. *See Scheuer v. Rhodes,* 416 U.S. 232, 241–42, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Qualified immunity protects all but the plainly incompetent and those who willingly violate the law. *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)." *King v. Beavers,* 148 F.3d 1031, 1034 (8th Cir.1998).

The standard for addressing qualified immunity at the Rule 12(b)(6) stage is whether immunity is established on the face of the complaint. *Schatz Family ex rel. Schatz v. Gierer,* 346 F.3d 1157, 1159 (8th Cir.2003). The defendants are entitled to qualified immunity unless the plaintiff has alleged the violation of a constitutional right that was clearly established at the time of the alleged violation. *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996). A right is "clearly established" when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Whisman Through Whisman v. Rinehart,* 119 F.3d 1303, 1309 (8th Cir.1997). In this regard, a flexible standard applies in this circuit, requiring some, but not precise factual correspon-

dence with precedent, and demanding that officials apply general, well-developed legal principles. *See id.*[10]

I find that the individual defendants are qualifiedly immune from suit on the "first cause of action" (paragraph 53) and the "fourth cause of action" (paragraphs 72–77, in part) insofar as it is claimed that the plaintiff was denied temporary licenses without due process of law, and that they are also qualifiedly immune from suit on all of the "second cause of action" and "third cause of action." In all other respects, the defendants' motion to dismiss on the basis of good faith immunity will be denied.

### 1. First Cause of Action

■■■ "To establish a procedural due process violation, a plaintiff must first demonstrate that he has a protected liberty or property interest at stake. *Batra v. Board of Regents of Univ. of Neb.*, 79 F.3d 717, 720 (8th Cir.1996). Secondly, a plaintiff must prove that he was deprived of such an interest without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)." *Marler v. Missouri State Bd. of Optometry*, 102 F.3d 1453, 1456 (8th Cir. 1996) (under state law, plaintiff had property interest in his optometry license).

The defendants do not appear to dispute the proposition that the plaintiff had a clearly established constitutional right to a fair hearing on the disciplinary charges that were brought against him, as has been generally alleged in the "first cause of action." They do dispute, however, that the plaintiff enjoyed due process protec-

tions in connection with their decisions to deny him annual and temporary licenses in 2002. In particular, they argue that the plaintiff did not have a property interest (or liberty interest) in obtaining a special license to treat racehorses.

■■■ Property interests are not created by the Constitution, but rather stem from an independent source such as state law. *Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir.2000) (property interest created by municipal code which limited the city's discretion to deny renewal of a rental license). To show the existence of a property interest in a license, a person must have more than a unilateral expectation of it; he or she must instead have a legitimate claim of entitlement to it. *See Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718 (8th Cir. 1995) (no property interest in renewal of bingo hall license when city had unfettered discretion to withhold approval of an application). A legitimate claim of entitlement can arise from procedures established in statutes or regulations adopted by states or political subdivisions. *Littlefield v. City of Afton*, 785 F.2d 596, 600 (8th Cir.2000) (building permit applicant had property interest where city was required by state law to issue permit upon the applicant's compliance with applicable ordinances), *overruled on other grounds, Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 n. 2 (8th Cir.1992).

Neb.Rev.Stat. Ann. § 2–1203.01(2) (Lexis 2001) provides that "[t]he State Racing Commission shall[11] ... [l]icense racing industry participants, race officials, mutuel

---

10. Qualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation. *Whisman*, 119 F.3d at 1309 (citing *Murphy v. Morris*, 849 F.2d 1101, 1103 (8th Cir.1988)). The

standard is to be applied to a particular defendant's conduct as a question of law and is to be decided by the court prior to trial. *Id.* (citing *Swenson v. Trickey*, 995 F.2d 132, 133 (8th Cir.1993)).

11. "Unless such construction would be inconsistent with the manifest intent of the Legislature, ... [w]hen the word may appears [in

employees, teleracing facility employees, telephone deposit center employees, concessionaires, and such other persons as deemed necessary by the commission and approve and license teleracing facilities and telephonic wagering if the license applicants meet eligibility standards established by the commission." It is unclear from the face of the statute whether the "if" clause applies to all licensing or merely to the licensing of teleracing facilities and telephonic wagering. If the former is the intended construction, then the statute can be read as requiring the commission to license every eligible applicant; but if the latter construction applies, it would seem that the commission has complete discretion regarding the licensing of individuals who work at racetracks. Considering that the provision for licensing teleracing facilities and telephonic wagering was amendatory language, I find that the Nebraska Legislature must have intended the former construction.[12] *See Adkisson v. City of Columbus,* 214 Neb. 129, 333 N.W.2d 661, 665 (1983) ("[W]here the general intent of the Legislature may be readily discerned, and yet the language in which the law is expressed leaves the application of it in specific instances obscure, doubtful, ambiguous, or uncertain, the courts may have recourse to historical facts or general information in order to aid them in interpreting its provisions.").

The commission's regulations do not contain any special eligibility requirements for issuance of a license to a practicing veterinarian. *See* 294 NAC § 14.005.01; note 9, *supra.* In general, however, the regulations provide that the commission

may deny a license after finding that the applicant has been guilty of specified misconduct or is financially irresponsible. 294 NAC § 10.004 provides in relevant part:

> The Commission may refuse to issue or renew a license, ... if it shall find that the applicant, ... has been convicted of a crime in any jurisdiction, or is or has been associating or consorting with bookmakers, touts, or persons of similar pursuits, or has personally engaged in similar pursuits, or is financially irresponsible, or has been guilty of or attempted any fraud or misrepresentation in connection with racing, breeding, or otherwise, or has violated or attempted to violate any law with respect to racing in any jurisdiction or any rule, regulation or order of the Commission, or adopted by the Commission, or has been guilty of engaging in similar, related or like practices.

This regulation effectively "impose[s] substantive limitations on the exercise of official discretion" by the commission to deny an annual license, and gives rise to a property interest. *See Stauch,* 212 F.3d at 429. Thus, under well-established principles of constitutional law, a hearing on the plaintiff's April 2002 application was required after the executive secretary declined to issue the annual license on his own authority. The defendants appear to have recognized the need for such a hearing in this instance, which they consolidated with the disciplinary complaint hearing(s).

As previously discussed, a "contested case" hearing was not required to

---

Nebraska statutes], permissive or discretionary action is presumed. When the word shall appears, mandatory or ministerial action is presumed." Neb.Rev.Stat. Ann. § 49–802(1) (Lexis 2002).

12. Prior to its amendment by Laws 1992, LB 718, § 2, section 2–12–3.01(2) unambiguously

provided that "[t]he State Racing Commission shall ... [l]icense racing industry participants, race officials, mutuel employees, concessionaires, and such other persons as deemed necessary by the commission if the license applicants meet eligibility standards established by the commission."

be held on the plaintiff's May 2002 application for a temporary license—the defendants had unfettered discretion under 294 NAC § 10.005.01 regarding the issuance of a temporary license. *See* note 9, *supra.* Thus, to the extent that the plaintiff is alleging in paragraph 53 of the "first cause of action" that he was denied procedural due process when he was denied a temporary license in 2002, the individual defendants may be entitled to qualified immunity.

 The plaintiff, however, also claims to have a liberty interest in being able to practice his chosen profession, requiring that he receive due process in connection with the denial of even the temporary license. (Complaint ¶ 50) If this case were concerned with the plaintiff's right to practice veterinary medicine in the State of Nebraska, I would be inclined to agree. *See Dunham,* 195 F.3d at 1010 (assuming, without deciding, that plaintiff had a liberty interest in practicing veterinary medicine even though statutory licensing provision did not create property interest). The only licensing matter that is at issue in this case, though, concerns the plaintiff's right to participate in Nebraska's "closely regulated" horseracing industry. *See Atokad Agr. and Racing Ass'n v. Governors of the Knights of Ak–Sar–Ben,* 237 Neb. 317, 466 N.W.2d 73, 75 (1991), *overruled on other grounds, Eccleston v. Chait,* 241 Neb. 961, 492 N.W.2d 860, 862 (1992).

" 'It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [fourteenth] Amendment to secure.'

*Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915). *See also Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) ('Without doubt, ["liberty" in the fourteenth amendment] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life . . . .'); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957) ('A state cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment.') (footnote omitted); *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959) ('[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty" and "property" concepts of the Fifth Amendment . . . .'); *Board of Regents v. Roth,* 408 U.S. 564, 573–74, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) (respondent denied relief because '[t]he State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case.')." *Phillips v. Vandygriff,* 711 F.2d 1217, 1222 (5th Cir.1983) (holding that the plaintiff had a protected liberty interest in working as the manager of a state-licensed savings and loan association).

Jobs in the horseracing industry are not "common occupations." They are gambling-related occupations that could be completely outlawed by the Nebraska Legislature, if it so chose.[13] *See Midwest*

---

13. The Nebraska Constitution generally prohibits gambling, but authorizes the Legislature to enact laws "providing for the licensing and regulation of wagering on the results of horseraces, wherever run, either within or outside of the state, by the parimutuel method, when such wagering is conducted by licensees within a licensed racetrack enclosure." Neb. Const. Art. III, § 24.

*Messenger Ass'n v. Spire*, 223 Neb. 748, 393 N.W.2d 438, 441–42 (1986) (upholding statutory prohibition against racetrack messenger service because such a business is closely intertwined with gambling); *Pegasus of Omaha, Inc. v. State*, 203 Neb. 755, 280 N.W.2d 64, 67 (1979) (same). Indeed, the very purpose of the State Racing Commission is "to provide statewide regulation of horseracing in order to prevent and eliminate corrupt practices and fraudulent behavior." Neb.Rev.Stat. Ann. § 2–1201.01 (Lexis 2001). I therefore conclude that the plaintiff does not have a liberty interest in being able to practice veterinary medicine at racetracks. *See, e.g., Payne v. Fontenot*, 925 F.Supp. 414, 424–25 & n. 5 (M.D.La.1995) (because the state has a high level of interest regulating its gambling industry, operating a video gaming establishment is an "uncommon occupation"); *Ziskis v. Kowalski*, 726 F.Supp. 902, 910–11 (D.Conn.1989) (legalized gambling is not a protected liberty interest); *Medina v. Rudman*, 545 F.2d 244, 251 (1st Cir.1976) (racetrack ownership is not one of life's "common occupations"). It follows that the plaintiff has not alleged the violation of a constitutional right regarding the denial of a temporary license in 2002, and that the individual defendants are immune from suit insofar as the "first cause of action" attempts to assert such a claim.

■ Determining whether the defendants are entitled to qualified immunity with respect to the consolidated hearing that was held on the disciplinary complaint and on the plaintiff's application for a 2002 annual license involves more than merely finding that the plaintiff had a clearly established right to due process at the hearing, of course. *See Harrison v. Dahm*, 911 F.2d 37, 40 (8th Cir.1990). It must also be considered "whether it was clearly established that defendants' conduct violated [the plaintiff's] right to due process.... So long as there remains a legitimate question as to whether [the plaintiff's] right to due process was violated by the particular actions of defendants, their conduct cannot violate clearly established law, and they will be entitled to qualified immunity." *Id.*

The defendants do not address this aspect of the qualified immunity defense, except to argue generally that "they did not act with 'malicious intention' to deprive Plaintiff of a constitutional right or to cause him 'other injury.' *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)."[14] (Filing 21, at 15) I therefore will not attempt to make a determination at this time as to whether the defendants are immune from suit regarding particular allegations of the plaintiff's due process claim. For example, I will not now examine whether the plaintiff had a clearly established constitutional right to obtain copies of investigative reports, as has been alleged (by implication) in paragraph 52 of the complaint. On the briefs presented, I am only prepared to rule that the plaintiff did not have a property interest or a liberty interest in obtaining a temporary license in 2002, and, consequently, that the individual defendants are immune from suit insofar as the plaintiff alleges in paragraph 53 of the "first cause of action" that he was denied a temporary license without notice and hearing.

### 2. Second Cause of Action

■ The defendant argue that there is no clearly established first amendment right to attend horse races. I agree.

■ There is no doubt that "the freedom of an individual to associate for the purpose of advancing beliefs and ideas

---

14. *Saxner* did not hold that an official who lacked "malicious intention" is entitled to qualified immunity. *See Thomas v. Gunter*, 32 F.3d 1258, 1261 (8th Cir.1994) (labeling such an argument "misplaced").

is protected by the First and Fourteenth Amendments." *Hanten v. School Dist. of Riverview Gardens,* 183 F.3d 799, 805 (8th Cir.1999) (quoting *Abood v. Detroit Board of Education,* 431 U.S. 209, 233, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977)). Expressive purposes protected by the first amendment include "a wide variety of political, social, economic, educational, religious and cultural ends." *See Vieira v. Presley,* 988 F.2d 850, 852 (8th Cir.1993) (quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 622–23, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). Certain intimate relationships which are close to a fundamental element of personal liberty should also be protected from state interference. *Id.* (holding defendants were entitled to qualified immunity because there is not clearly established law whether or not associations with friends and acquaintances are sufficiently intimate to be entitled to constitutional protection).

In *City of Dallas v. Stanglin,* 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989), the Supreme Court upheld a city ordinance that restricted admission to "teenage" dance halls against a first amendment challenge. The Court could find no protected expressive purpose in dance-hall patrons coming together to engage in a recreational activity. It stated: "The hundreds of teenagers who congregate each night at this particular dance hall are not members of any organized association; they are patrons of the same business establishment. Most are strangers to one another, and the dance hall admits all who are willing to pay the admission fee. There is no suggestion that these patrons 'take positions on public questions' or perform any of the other similar activities described in *Board of Directors of Rotary International v. Rotary Club of Duarte,* 481 U.S. 537, 548, 107 S.Ct. 1940, 1947, 95 L.Ed.2d 474 (1987)." *Id.* at 25–26 109 S.Ct. 1591. The Court also thought it was "clear beyond cavil that dance-hall pa-

trons, who may number 1,000 on any given night, are not engaged in the sort of 'intimate human relationships' referred to in *Roberts.*" *Id.* at 25, 109 S.Ct. 1591. The Constitution does not recognize a generalized right of "social association." *Id.* at 26.

There is no obvious reason why racetrack patrons should enjoy associational rights under the first amendment when dance-hall patrons do not. The individual defendants cannot be sued for allegedly violating the first amendment.

### 3. Third Cause of Action

A successful equal protection claim can be brought by a "class of one," where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). The plaintiff alleges that he has been treated differently from similarly situated individuals, but he has not alleged that the disparate treatment was either intentional or irrational. Because he has failed to assert the violation of a constitutional right, the individual defendants are entitled to qualified immunity.

### 4. Fourth Cause of Action

Consistent with my ruling on the plaintiff's "first cause of action," I find that he did not have a protected property or liberty interest in obtaining a temporary license during 2003. The individual defendants are qualifiedly immune from suit on that part of the "fourth cause of action," but not on the part that alleges the plaintiff was denied due process regarding his application for an annual license in 2003.

## C. Eleventh Amendment Immunity

 It is undisputed that the State Racing Commission, as a state agency, is not a proper party to this action. *See Graves v. Stone*, 25 Fed.Appx. 488, 490 (8th Cir.2002) ("[T]he Eleventh Amendment bars any suit brought in federal court by an individual against a state or its agencies, regardless of the nature of the relief sought."). It is also undisputed that the other defendants in their official capacities are immune from suit for damages, but that under the holding of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), they may be sued on federal constitutional claims for prospective, declaratory or injunctive relief. *See, e.g., Klingler v. Director, Dept. of Revenue*, 281 F.3d 776 (8th Cir.2002) (allowing claim under Title II of ADA for declaratory and injunctive relief against state official).

 The defendants argue, however, that the plaintiff's requests for declaratory and injunctive relief on his due process claims are moot because the racing seasons for which he was seeking licensing are both over. In response, the plaintiff argues that an exception to the mootness doctrine should be applied in this case because the defendants delayed taking any action on his applications during 2002 and 2003, and because they are likely to continue to deny him a license.

 " '[T]he capable-of-repetition doctrine applies only in exceptional situations,' [*Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983)], 'where the following two circumstances [are] simultaneously present: " '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again,' " ' [*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481, 110 S.Ct. 1249, 1255, 108 L.Ed.2d 400 (1990)] (quot-

ing *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam), in turn quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curiam)); *see also Norman v. Reed*, 502 U.S. 279, 288, 112 S.Ct. 698, 704–705, 116 L.Ed.2d 711 (1992)." *Spencer v. Kemna*, 523 U.S. 1, 17–18, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998) (placing burden on party asserting jurisdiction). While a plausible argument can be made for applying the exception in this case, it is not necessary to do so.

The defendants represent in their brief that the state district court's decision restoring the plaintiff's eligibility for a license has been stayed. (Filing 21, at 3, ¶ 13) If the commission's ruling that the plaintiff will not be eligible for a license until January 1, 2006, remains in effect, then the plaintiff's requests for declaratory and injunctive relief on his due process claims ("first cause of action" and "fourth cause of action") are not moot. The same is also true of the first amendment claim ("second cause of action"), in which the plaintiff challenges the commission's order barring him from public areas during his period of ineligibility, and the equal protection claim ("third cause of action"), in which the plaintiff's challenges the commission's directive that effectively prohibits him from treating racehorses off-premises while he is ineligible for licensing. Consequently, only the commission will be dismissed from the action on the basis of eleventh amendment immunity; the other defendants in their official capacities remain subject to suit for declaratory and injunctive relief on all claims.

## D. *Younger* Abstention

 "When monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to

award damages, the case should not be dismissed. [*Night Clubs, Inc. v. City of Fort Smith,* 163 F.3d 475, 482 (8th Cir. 1998).] As long as there may be issues which will need to be determined in federal court, a stay rather than a dismissal is the preferred procedure to use in abstaining. *International Assoc. of Entrepreneurs of America v. Angoff,* 58 F.3d 1266, 1271 (8th Cir.1995)." *Yamaha Motor Corp., U.S.A. v. Stroud,* 179 F.3d 598, 603–04 (8th Cir. 1999) (applying *Quackenbush v. Allstate Insurance Co.,* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)). *See also Amerson v. State of Iowa,* 94 F.3d 510, 512–14 (8th Cir.1996) (affirming dismissal of § 1983 claim for damages that first required declaring unconstitutional a state court judgment on a matter firmly committed to the states, *i.e.,* domestic relations policy).

Inasmuch as the defendants have not requested that the action be stayed, nor, for that matter, presented evidence as to the pendency of the state court action, I will not consider at this time whether abstention may be warranted. I simply hold that the defendants are not entitled to dismissal of the action.

### E. *Rooker-Feldman* Doctrine

▆▆▆▆ "The *Rooker-Feldman* doctrine provides that, 'with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments.' *Lemonds v. St. Louis County,* 222 F.3d 488, 492 (8th Cir.2000) (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923)). District courts have no authority to review state court decisions, 'even if those challenges allege that the state court's action was unconstitutional,'

*Feldman,* 460 U.S. at 486, 103 S.Ct. 1303, because 'federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court,' *Lemonds,* 222 F.3d at 492 (citations omitted)." *Gisslen v. City of Crystal, Minn.,* 345 F.3d 624, 627 (8th Cir.2003) (affirming dismissal of action seeking damages for alleged constitutional violations connected to taking of landowner's property through state court eminent domain proceeding).

▆▆▆▆ "[T]he *Rooker-Feldman* doctrine extends beyond 'straightforward appeals ... [to] more indirect attempts by federal plaintiffs to undermine state court decisions.' [*Lemonds,* 222 F.3d at 492.] In other words, the state and federal claims need not be identical for the doctrine to apply. *See Goetzman v. Agribank, FCB (In re Goetzman),* 91 F.3d 1173, 1177 (8th Cir.1996). The doctrine thus precludes federal court jurisdiction over federal claims that are 'inextricably intertwined' with claims of the state court action. *See Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. A federal claim is inextricably intertwined if 'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.' *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)." *Id.*

▆▆▆ The only "inextricable intertwining" that has been identified by the defendants in this case concerns the state district court's determination that the commission had jurisdiction to discipline the plaintiff after his license lapsed. I agree that this issue was finally determined in the state court proceeding (*see* filing 21 attachment, pp. 5–6), and that such determination cannot be reviewed by this court.[15] Accordingly, paragraph 51 of

---

**15.** The *Rooker-Feldman* doctrine applies notwithstanding the pendency of an appeal from the state court order. *See Simes v. Huckabee,* 354 F.3d 823, 828 n. 3 (8th Cir.2004).

the plaintiff's "first cause of action" will be dismissed for lack of subject matter jurisdiction. It is not apparent that any other alleged constitutional violations were determined adversely to the plaintiff in state court, nor that any such claims reasonably could have been decided by the state district court, which, under the Nebraska Administrative Procedure Act, was limited to conducting a review "de novo on the record of the agency." *See* Neb.Rev.Stat. § 84–917(5)(a).

### F. Issue or Claim Preclusion

The defendants also generally argue that *res judicata* or collateral estoppel principles should prevent the plaintiff from litigating issues that were raised, or that could have been raised, in the state court proceeding. Again, it is not apparent that any such issues exist in this case.

### G. Failure to State a Claim

Finally, the defendants challenge each of the plaintiff's "causes of action" as failing to state a claim upon which relief can be granted. Because I have already examined the sufficiency of the plaintiff's allegations in connection with the defense of qualified immunity, little additional discussion is required.

### 1. First Cause of Action

It is alleged in paragraph 50 of the complaint that "[t]he Plaintiff had a liberty interest in practicing in his chosen profession of a veterinarian and a property interest in the license issued by the Defendant Racing Commission that could only be revoked upon just cause and with due process of law." Because this allegation contains only legal conclusions, I will dismiss it in order to avoid confusion of the issues.[16]

I have held that the plaintiff cannot maintain a procedural due process claim regarding the denial of a temporary license. To the extent that such a claim is alleged in paragraph 53 of the "first cause of action," it will be dismissed.

■ The defendants have not challenged the specific allegations of the plaintiff's due process claims, but have merely asserted, based on the existence of administrative procedures requiring notice and hearing, that he was "afforded all the process that was due." Inasmuch as the plaintiff alleges that those procedures were not followed by the commission, they provide no basis for dismissal of his claims.

### 2. Second Cause of Action

■ I have determined that the plaintiff does not have a first amendment right to associate with racetrack patrons. Accordingly, his second cause of action will be dismissed for failure to state a claim upon which relief can be granted.

### 3. Third Cause of Action

I have also determined in ruling on qualified immunity that the plaintiff's "third cause of action" fails to state a valid equal protection claim because there is no allegation that the disparate treatment was either intentional or irrational. I will dismiss the "third cause of action" because of this pleading deficiency, but will grant the plaintiff leave to amend.

### 4. Fourth Cause of Action

To the extent that the "fourth cause of action" alleges that the plaintiff was denied procedural due process when he was not issued a temporary license in 2003, it will be dismissed for failure to state a claim

---

**16.** I have already determined, for example, that the plaintiff does not have a liberty interest in being able to practice veterinary medicine at racetracks. Whether he has a liberty interest in generally practicing veterinary medicine is not at issue in this case. There also is no issue in this case concerning license revocation.

upon which relief can be granted. As previously determined, the plaintiff does not have a property interest in a temporary license, and he cannot claim a liberty interest in being able to treat racehorses.

### III. Conclusion

The plaintiff cannot bring a § 1983 action against the Nebraska State Racing Commission in federal court. He can, however, sue the executive secretary and the three members of the commission in their official capacities, but only for declaratory and injunctive relief. Such claims are not moot when, according to the defendants, the plaintiff remains ineligible for licensing. The *Rooker-Feldman* doctrine prevents the plaintiff from again challenging the commission's jurisdiction, however.

Regarding the plaintiff's claims for damages, the individual defendants are entitled to quasi-judicial immunity in connection with the plaintiff's disciplinary proceeding, and are entitled to qualified immunity on the first amendment claims, the equal protection claims, and those portions of the due process claims that concern temporary licensing. Because the qualified immunity rulings are based on a failure to allege the violation of constitutional rights, these claims will also be dismissed as against the defendants in their official capacities. However, the plaintiff will be granted leave to amend the equal protection claims, as against the defendants in their individual and official capacities, to correct the pleading deficiencies noted.

Accordingly,

IT IS ORDERED that the defendants' motion to dismiss (filing 19) is granted in part and denied in part, as follows:

1. As against the defendants Dennis Oelschlager, Dennis P. Lee, Janell Beveridge, and Bob Volk, sued in their individual capacities, paragraphs 51, 54, 57, 58, 59, 60, 61, 62, and 63 of the plaintiff's "first cause of action" are dismissed on the basis of quasi-judicial immunity.

2. As against the defendants Dennis P. Lee, Janell Beveridge, and Bob Volk, sued in their individual capacities, paragraph 53 of the plaintiff's "first cause of action" is dismissed in part, on the basis of quasi-judicial immunity, only insofar as it is alleged that these defendants denied the plaintiff's application for an annual license.

3. As against the defendants Dennis Oelschlager, Dennis P. Lee, Janell Beveridge, and Bob Volk, sued in their individual capacities, paragraph 66 of the plaintiff's "second cause of action" is dismissed on the basis of quasi-judicial immunity.

4. As against the defendants Dennis Oelschlager, Dennis P. Lee, Janell Beveridge, and Bob Volk, sued in their individual capacities, paragraph 53 of the plaintiff's "first cause of action" is dismissed in part, on the basis of qualified immunity, only insofar as it is alleged that the plaintiff was denied a temporary license without due process of law.

5. As against the defendants Dennis Oelschlager, Dennis P. Lee, Janell Beveridge, and Bob Volk, sued in their individual capacities, paragraphs 72–77 of the plaintiff's "fourth cause of action" are dismissed in part, on the basis of qualified immunity, only insofar as it is alleged that the plaintiff was denied a temporary license without due process of law.

6. As against the defendants Dennis Oelschlager, Dennis P. Lee, Janell Beveridge, and Bob Volk, sued in their individual capacities, the plaintiff's "second cause of action" is dis-

missed, on the basis of qualified immunity, in its entirety.

7. As against the defendants Dennis Oelschlager, Dennis P. Lee, Janell Beveridge, and Bob Volk, sued in their individual capacities, the plaintiff's "third cause of action" is dismissed, on the basis of qualified immunity, in its entirety.

8. As against the defendant Nebraska State Racing Commission, all claims are dismissed on the basis of eleventh amendment immunity, and it shall no longer be a party to the action.

9. As against the defendants Dennis Oelschlager, Dennis P. Lee, Janell Beveridge, and Bob Volk, sued in their official capacities, any and all claims for money damages are dismissed on the basis of eleventh amendment immunity.

10. As against all defendants, paragraph 51 of the plaintiff's "first cause of action" is dismissed for lack of subject matter jurisdiction.

11. As against all defendants, paragraph 50 of the plaintiff's "first cause of action" is dismissed for failure to state a claim upon which relief can be granted.

12. As against all defendants, paragraph 53 of the plaintiff's "first cause of action" is dismissed in part, for failure to state a claim upon which relief can be granted, only insofar as it is alleged that the plaintiff was denied a temporary license without due process of law.

13. As against all defendants, the plaintiff's "second cause of action" is dismissed in its entirety for failure to state a claim upon which relief can be granted.

14. As against all defendants, the plaintiff's "third cause of action" is dismissed in its entirety for failure to state a claim upon which relief can be granted, but the plaintiff is hereby granted leave to file an amended complaint, within 10 days of today's date, which includes all essential elements of an equal protection claim.

15. As against all defendants, paragraphs 72–77 of the plaintiff's "fourth cause of action" are dismissed in part, for failure to state a claim upon which relief can be granted, only insofar as it is alleged that the plaintiff was denied a temporary license without due process of law.

16. In all other respects, the defendants' motion to dismiss is denied.